UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


JOSEPH JESUS LOPEZ,          )     Case No.  5:04CV391
                                    )            1:98CR356
           Petitioner,      )
                                    )     JUDGE JAMES GWIN
        v.                 )     Magistrate Judge George J. Limbert
                                    )
UNITED STATES OF AMERICA,    )     REPORT AND RECOMMENDATION
                                    )     OF MAGISTRATE JUDGE
          Respondent.     )


On June 14, 2004, pursuant to Court Order, Petitioner, a federal prisoner currently incarcerated at a federal correctional institution in Adelanto, California, executed a pro se amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  Electronic Court Filing Docket #18  (hereinafter ECF to refer to filings in Case Number 5:04CV391).  The motion was filed with the Court on June 14, 2004 and  Respondent filed a response in opposition to the motion on June 29, 2004.  ECF Dkt #20.  Petitioner thereafter filed a reply, supplement exhibits and a statement of undisputed issues of material fact on July 18, 2004.  ECF Dkt. #s 21, 22, 23.  For the following reasons, the undersigned recommends that the Court deny Petitioner's § 2255 motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On October 21, 1998, Petitioner and a co-defendant were indicted for conspiring to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846.  Criminal Electronic Court Filing Docket #1 (hereinafter Criminal ECF to refer to filings in Case Number 1:98CR356).

Petitioner was also separately indicted for distributing approximately 10 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii). *Id*.

On June 21, 1999, Petitioner, through counsel, filed a motion to sever his trial from that of his co-defendant. Criminal ECF Dkt. #49. This motion also included a motion to suppress evidence and a motion for disclosure of witnesses. *Id*. The District Court denied Petitioner's motions and a joint jury trial was held, with Petitioner represented by counsel and his co-defendant representing himself with counsel on stand-by. Criminal ECF Dkt. #58. On July 28, 1999, the jury found Petitioner and his co-defendant guilty on all charges in the indictment. Criminal ECF Dkt. #s 67, 71. On November 2, 1999, the Court sentenced Petitioner to a concurrent term of 360 months of imprisonment followed by five years of supervised release and a $25,000 fine and a $200.00 special assessment. Criminal ECF Dkt. #88. The Court sentenced Petitioner's co-defendant to life in prison and a $100.00 special assessment. Criminal ECF Dkt. #105.

On November 9, 1999, Petitioner filed a notice of appeal to the Sixth Circuit Court of Appeals. Criminal ECF Dkt. #92. In his appellate brief, Petitioner alleged, *inter alia*, that his sentence must be vacated pursuant to *Apprendi v. New Jersey,* 530 U.S. 466 (2000) because the amount of cocaine involved in the conspiracy was not alleged in the indictment or submitted to the jury at trial. *United States of America v. Lopez*, 309 F.3d 966 (6th Cir. 2002). Petitioner also asserted that the district court erred in denying his motion to sever his trial from that of his co-defendant. *Id*. On October 29, 2002, the Sixth Circuit affirmed Petitioner's conviction, fully addressing each of his assignments of error. *Lopez,* 309 F.3d 966.

Petitioner thereafter filed a petition for a writ of certiorari in the United States Supreme Court. On March 3, 2003, the United States Supreme Court denied his petition. *Lopez v. United*

*States*, 537 U.S. 1244 (2003).

On February 12, 2004, Petitioner, pro se, filed his original motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  ECF Dkt #1.  The motion was filed with the Court on February 26, 2004.  *Id*.  On February 27, 2004, the undersigned received the referral of this case from Judge Gwin.  ECF Dkt. #4.

On March 23, 2004, Respondent filed a motion to compel Petitioner's compliance with Local Rule 7.1 regarding page limitations and/or a motion to strike those portions of the filing that do not comply with the Local Rule, a motion to exceed the page limitations pursuant to Local Rule 7.1, and a motion to quash Petitioner's request for discovery.  ECF Dkt. #8.  Respondent also filed a response in opposition to Petitioner's § 2255 motion.  ECF Dkt. #9.  On April 9, 2004, the undersigned granted Respondent's motion to compel Petitioner to comply with the Local Rule's page limitations and ordered Petitioner to file an amended § 2255 motion that complied with the Local Rules, denied Respondent's motion to exceed the page limitations as premature, and granted Respondent's motion to quash Petitioner's requests for discovery.  ECF Dkt. #10.

On April 26, 2004, Petitioner filed a motion requesting that the undersigned reconsider the April 9, 2004 Order and allow him to file an oversized brief.  ECF Dkt. #11.  He also filed a "traverse" to Respondent's response, a "Statement of undisputed issues of material fact," and supplements to his § 2255 motion.  ECF Dkt. #s 12, 13, 14.  On May 4, 2004, Respondent filed a motion to strike Petitioner's noncompliant "traverse."  ECF Dkt. #16.

On May 17, 2004, the undersigned granted Petitioner's motion to reconsider and ordered him to file an amended § 2255 motion consisting of no more than forty pages of double-spaced, typewritten text.  ECF Dkt. #17.  The Court further ordered Respondent to file an amended response

-3-

to the motion and granted Respondent's prior motion to exceed the page limitations of Local Rule

7.1.  *Id*.  The Court also granted Respondent's motion to strike Petitioner's "traverse", but permitted

Petitioner to file a reply consisting of no more than twenty pages of double-spaced typewritten text

that was responsive to Respondent's response in opposition to Petitioner's amended § 2255 motion.

*Id.*

On June 14, 2004, Petitioner filed the instant amended § 2255 motion raising the following

grounds for relief:

> A.  **Ground one**: Ineffective Assistance of Counsel During the Trial Process, When Counsel Failed To Object Or Move For Mistrial Due To The "Bolstering" And "Vouching" By The Prosecutor For Witnesses Victoria Webster And Duran Banner, As Well As The Prosecutor's References To Matters Outside The Trial Record And The Uncorrected And Repeated Perjury By Government Witnesses.

> B.  **Ground two**: Ineffective Assistance Of Counsel During The Trial Process When Counsel Failed To Advise Him, And Affirmatively Misadvised Him, As To His Constitutional Right To Testify.

> C.  **Ground three**: Ineffective Assistance of Counsel Mr. Lopez Was Prejudiced By The Objectively Unreasonable Performance of Counsel During The Sentencing Process, When Counsel Failed to Move For A Downward Departure Under U.S.S.G. § 5K2.0 Due To Outrageous Conduct By The Government During The Pretrial, Trial, And Sentencing Proceedings.

> D.  **Ground four**: Ineffective Assistance Of Counsel Sentencing Process, When Counsel Failed To Make A Proper Objection To Mr. Lopez's Sentence And Move For Downward Departure Under U.S.S.G. § 5K2.0 Due To Serious Disparity In His Sentence.

> E.  **Ground five**: Ineffective Assistance Of Counsel Due To The Cumulative Impact Of Multiple Deficiencies Or Errors By Counsel During The Pretrial, Trial, Sentencing, And Direct Appeal Process.

> F.  **Ground six**: Denial Of Due Process Of Law.

ECF Dkt. #18.

-4-

On June 29, 2004, Respondent filed a response in opposition to Petitioner's amended §2255 motion.  ECF Dkt. #20.  Petitioner did not file a reply.

## II.    LAW AND ANALYSIS

Under 28 U.S.C. § 2255, a federal inmate is provided with a post-conviction means of collaterally attacking his conviction or sentence.  *In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999).  Motions brought under § 2255 are the sole means by which a federal prisoner can collaterally attack a conviction or sentence that he alleges to be in violation of federal law.  *See United States v. Davis*, 417 U.S. 333 (1974); *United States v. Cohen*, 593 F.2d 766, 770 (6th Cir. 1979).  28 U.S.C. § 2255 sets forth four grounds upon which federal prisoners may challenge their conviction or sentence:

1.   That the sentence was imposed in violation of the Constitution or laws of the United States;

2.   That the court was without jurisdiction to impose such sentence;

3.   That the sentence was in excess of the maximum authorized by law;

4.   That the sentence is otherwise subject to collateral attack.

*United States v. Hill*, 368 U.S. 424. 426-27 (1962); 28 U.S.C. § 2255.

Motions to vacate, set aside, or correct a sentence pursuant to § 2255 must be filed in the trial court that sentenced the prisoner.  28 U.S.C. § 2255; *Gregory,* 181 F.3d at 714.  In order to prevail on a § 2255 motion alleging constitutional error, the petitioner must establish that an error of constitutional magnitude existed that had a substantial and injurious effect or influence on the proceedings.  *United States v. McNeil*, 72 F. Supp. 2d 801, 803 (N.D. Ohio 1999), citing *United States v. Watson*, 165 F.3d 486, 488 (6th Cir. 1999)(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993)).  In order to prevail on a § 2255 motion alleging non-constitutional error, the

petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990) (citing *United States v. Hill*, 368 U.S. 424, 428 (1968)).

**A**.  **INEFFECTIVE ASSISTANCE OF COUNSEL**

In Grounds One, Two, Three, Four and Five, Petitioner alleges that his trial counsel was ineffective in numerous ways.  Because these Grounds for Relief had a common basis in law, the undersigned shall address them under the same ineffective assistance of counsel standard but conduct an independent analysis of each.

In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).   Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment."

-6-

*West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990).  "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

1. **GROUND ONE**

   a. **FAILURE TO OBJECT TO VOUCHING AND/OR BOLSTERING**

In his first ground for relief, Petitioner asserts two separate allegations concerning the ineffectiveness of his trial counsel.  Petitioner asserts that counsel was ineffective because he did not investigate caselaw such as *United States v. Francis*, 170 F.3d 546 (6th Cir. 1999) and *United States v. Carroll*, 262 F.3d 1380, 1382-1383 (6th Cir. 1994), which held that vouching and bolstering by the prosecutor on matters outside of the trial record is unlawful.  *Id*. at 12-13.  Petitioner contends that his counsel was ineffective in failing to object or move for a mistrial after the prosecutor allegedly "bolstered" or "vouched for" trial witnesses Victoria Webster and Duran Banner.  ECF Dkt. #18 at 6-8, 12-13.  Petitioner alleges that had his counsel investigated the caselaw and objected to or moved for a mistrial on the prosecutor's vouching and bolstering of Victoria Webster and Duran Banner, a reasonable probability existed that the jury would have found him not guilty of all charges.  *Id.* at 12-13.

Petitioner cites the prosecutor's statements to the jury in closing argument in which the prosecutor reviews Victoria Webster's testimony, stating that she could have made up a story that was better than the one that she actually told to police and the jury about Petitioner's co-defendant

-7-

being involved in the case.  The prosecutor then told the jury about Ms. Webster's testimony:  "That, ladies and gentlemen, is credible, very credible, because she is not making up anything in relation to what she said on that day or what she said from the witness stand. She is telling you the truth." Petitioner also cites to a statement by the prosecutor that "Laster never met Victoria Webster."  He also cites the prosecutor's statements about Petitioner's co-defendant that "He was the one who, after Victoria was caught in Sandusky, stopped in Sandusky, he was the one traveling in a second car make sure that things are kosher, that she got to Cleveland or her destination safely without any interference, and essentially, the second vehicle was to detract whatever law enforcement would be nearby..." Petitioner further cites the prosecutor's statement that "I submit to you that that is credible," when speaking about Banner's testimony as to missing ounces of cocaine.  Finally, Petitioner cites to the prosecutor's statement that "I believe that the evidence is there that we have proven the charges against both defendants beyond a reasonable doubt." ECF Dkt. #18 at 6, citing Trial Transcript at 549-553.

Petitioner has correctly brought his ineffective assistance of counsel claim by way of the instant § 2255 motion in the trial court rather than by direct appeal to the Sixth Circuit Court of Appeals. *United States v. Long,* 190 F.3d 471, 478 (6th Cir.1999); *United States v. Pruitt,* 156 F.3d 638, 646 (6th Cir.1998).  Trial counsel's failure to object to a prosecutor's improper vouching or bolstering can constitute the ineffective assistance of counsel when the failure to object constitutes deficient performance that prejudices the petitioner's case because the result at trial or on appeal would likely have been different.  Accordingly, in order to succeed on his ineffective assistance of counsel claim, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S.

-8-

at 694; *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004).  The Sixth Circuit Court of

Appeals has determined that:

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness.  Generally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony.... Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.

*United States v. Francis,* 170 F.3d 546, 550-51 (6th Cir.1999) (internal citations omitted).  The Court

has further held that "[o]rdinarily, a prosecutor may not express a personal opinion concerning the

guilt of the defendant or the credibility of trial witnesses, because such personal assurances of guilt

or vouching for the veracity of witnesses by the state's representative exceeds the legitimate

advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a

neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.

1999), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399 (6th Cir. 2000).

    The undersigned recommends that the Court find that none of the prosecutor's remarks cited

by Petitioner in the instant case rise to the level of improper vouching or bolstering and that

therefore, his counsel's failure to object to these comments at trial did not constitute deficient

performance.  In the first comment cited by Petitioner regarding Victoria Webster's testimony, the

prosecutor did not offer his personal opinion in any way or otherwise imply that her testimony was

corroborated by other evidence unknown to the jury but known to the prosecutor.  Criminal ECF

Dkt. #120 at 549-550.  Further, the prosecutor's comments cited by Plaintiff as to Ms. Webster's

testimony had nothing whatsoever to do with Petitioner as the prosecutor was emphasizing at that

point that Ms. Webster had implicated Petitioner's co-defendant in the conspiracy.  *Id.*

Further, the statement that Laster never met Victoria Webster was merely a summation of Mr. Laster's testimony, as he did testify that he never met Ms. Webster personally.  Criminal ECF Dkt. #119 at 146.  The prosecutor interjected no personal opinion or corroboration with this statement.

The undersigned further recommends that the Court also find that the comment about Plaintiff's co-defendant traveling in the second car in order to make sure things went smoothly did not bolster the credibility of a witness or express the personal opinion of the prosecutor.

In addition, the prosecutor's statement that "I submit to you that that is credible when speaking of Banner's testimony also does not rise to the level of personal opinion or bolstering, although it does come closer than the other statements cited by Petitioner.  However, the Sixth Circuit has held that "[w]e find nothing suggestive of personal opinion in the phrase 'I submit.'" *United States v. Covington*, 7 Fed.Appx. 386, 390 , 2001 WL 302067 at **3 (6th Cir. ,2001), unpublished.

Moreover, the last statement cited by Petitioner regarding the prosecutor's statement that "I believe that the evidence is there that we have proven the charges against both defendants beyond a reasonable doubt" does not speak of the prosecutor's belief in the guilt of Petitioner or the credibility of the witnesses.  The prosecutor merely stated that based upon the evidence presented to the jury, the prosecution met its burden in the case.

For these reasons, the undersigned recommends that the Court find that Petitioner's counsel's failure to object to any of the statements cited by Petitioner did not constitute deficient performance because none of the cited comments, either separately or cumulatively, rose to the level of improper

-10-

bolstering or vouching by the prosecutor.

However, even if one or more of the prosecutor's statements were indeed improper and Petitioner's trial counsel should have objected but did not, Petitioner cannot show that the outcome of his trial would likely have been different had counsel objected to these remarks and the court had sustained those objections.  Mark Jefferson, Donald Laster, Victoria Webster, Duran Banner, Detective Omar Rodriguez, and Agent Hartnett all witnesses at trial, identified Petitioner and testified as to Petitioner's role in the drug conspiracy.  Criminal ECF Dkt. #119 at 91-96, 104-117; 130-166, 179-190, 198-210; 244-278; 321-340, 351, 357, 370-375; 418-421; 440-449, 452-457.

For these reasons, the undersigned recommends that the Court dismiss this claim.

### b.    GROUND ONE -FAILURE TO OBJECT TO PROSECUTOR'S REFERENCES TO MATTERS OUTSIDE OF THE RECORD

In the second part of Ground One, Petitioner asserts that his counsel was ineffective for failing to "object, move for a new trial, or ask for curative instructions based on the prosecutor's references to matters outside the trial record in final argument and the repeated and uncorrected perjury by government witnesses."  ECF Dkt. #18 at 12.  The undersigned recommends that the Court dismiss this assertion because Petitioner has failed to specify or otherwise identify the prosecutor's references that were allegedly outside of the record.

### c.    GROUND ONE - PERJURED TESTIMONY

Petitioner also appears to assert that counsel should have objected to, moved for a new trial, or requested a curative instruction when the prosecution referred to "the repeated and uncorrected perjury by government witnesses."  ECF Dkt. #18 at 12.  However, Petitioner fails to identify the specific portions of testimony that were allegedly perjured.  *Id.*  In his Statement of Claim, Petitioner

-11-

repeatedly alleges that the government presented perjured testimony and he refers to his Appendix at Exhibit I. *Id.* at 5-6. However, Exhibit I is merely a copy of the indictment of Petitioner. It shows no evidence of perjured testimony used by the government. ECF Dkt. #18, Exhibit I. Further, Petitioner avers in his Statement of Claim that "this case was a close case with the witnesses involved against Mr. Lopez testifying to save their skin after having been caught red handed violating the narcotics laws; as such, their credibility was minimal. The prosecutor knew this and that's why he submitted the unlawful argument and testimony." ECF Dkt. #18 at 8. Again, Petitioner does not identify the instances of allegedly perjured testimony and simply refers to the trial transcript recording the prosecutor's closing argument. ECF Dkt. #18 at 8. The part of the trial transcript that Petitioner cites is the same part of the prosecutor's closing argument in which he alleges the ineffectiveness of his counsel in not objecting because of improper vouching and bolstering of government witnesses. In addition, the transcript reflects that Petitioner's counsel vigorously cross-examined the government witnesses, emphasizing their prior criminal convictions, convictions connected to Petitioner's case, and the fact that some of the witnesses had received or would receive reduced sentences in exchange for the testimony against Petitioner. Tr. at 102-106, 118-119, 167-211, 231-233, 236, 238-240, 266-267, 270-271, 277-278, 361-380, 429-430. Petitioner's counsel also questioned Mr. Laster, Mr. Marshall, Ms. Webster and Mr. Banner about prior inconsistent statements that they had made to the FBI and to the grand jury. Tr. at 185-186, 188-190, 197-198, 203-204, 209-210, 231-233, 236, 238-240, 266-267, 270-271, 366-380. Accordingly, Petitioner's counsel raised the credibility of the government witnesses' to the jury and it was for the jury to determine the credibility of the witnesses.

For these reasons, the undersigned recommends that the Court dismiss this ground for relief.

-12-

**2. GROUND TWO -FAILURE TO ADVISE PETITIONER OF RIGHT TO TESTIFY**

In his second ground for relief, Petitioner alleges that his trial counsel failed to inform him of his constitutional right to testify at his trial and his right to ultimately decide whether he wanted to take the stand in his own defense.  ECF Dkt. #18 at 13-14.  Petitioner contends that had counsel informed him of these rights, he would have testified and directly rebutted each and every material fact presented by Donald Laster, Victoria Webster, and Duran Banner.  *Id.* at 15.  Petitioner specifically outlines the testimony that he would have presented in order to rebut the witnesses' testimony.  *Id.* at 15-16.  He concludes that but for counsel's omissions as to his right to testify, a reasonable probability existed that the jury would have found him not guilty.  *Id.* at 16.

The undersigned notes that in this ground for relief, Petitioner states, "Counsel could have but did not advise Mr. Lopez that he had a constitutional right to testify in the trial process even if counsel advised and believed that such testimony would be inadvisable from counsel's viewpoint."  ECF Dkt. #18 at 14.  From this assertion, it sounds as if Petitioner is stating both that counsel failed to inform him of his right to testify at trial, and that counsel advised him of his right to testify but advised against doing so at trial.  These conflicting assertions are suspect as to Petitioner's claim that his attorney failed to inform him of his right to testify.

Nevertheless, a criminal defendant has a constitutional right to testify in his own behalf. *Rock v. Arkansas,* 483 U.S. 44, 51-53 (1987).  But courts have held that a "barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary ... to give the claim sufficient credibility

to warrant a further investment of judicial resources in determining the truth of the claim."
*McCoy v. Bock*, No. 01-10052-BC, 2003 WL 22994984, *11 (E.D.Mich.) (Dec. 17, 2003),
unpublished, quoting *Underwood v. Clark,* 939 F.2d 473, 476 (7th Cir.1991). *Accord Chang v. U.S.,*
250 F.3d 79, 84-85 (2nd Cir.2001); *Sciliano v. Vose,* 834 F.2d 29, 31 (1st Cir.1987).

      In the instant case, Petitioner provides no support beyond his own assertion that his attorney
failed to inform him of his right to testify.  Petitioner does not assert that his attorney misled him and
he does not indicate that he believed that he was not permitted to testify.  *See McCoy*, 2003 WL
22994984.  Moreover, Petitioner did not "alert the trial court" of his wish to testify or of a
disagreement with counsel, if one existed, over his desire to testify.  "When a defendant does not
alert the trial court of a disagreement, waiver of the right to testify may be inferred by the
defendant's conduct.  Waiver is presumed from the defendants' failure to testify or notify the trial
court of the desire to do so."  *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).

      Even assuming that Petitioner did not waive his right to testify and counsel did deficiently
perform in failing to inform Petitioner of this right, Petitioner fails to establish the prejudice prong
of *Strickland*.  Petitioner sets forth the statements that he would have made had he been called to
testify.  ECF Dkt. #18 at 15-16.  However, these blanket denials of guilt as to every allegation of
wrong-doing by other witnesses likely would not have changed the jury's guilty verdict against
Petitioner due to the great weight of evidence against him.  Further, the jury rejected a similar "no
involvement" defense theory that Petitioner's co-defendant had tried to establish at trial.  *United
States v. Lopez*, 309 F.3d 966, 971-972 (6th Cir. 2002).

      Accordingly, the undersigned recommends that the Court deny Petitioner's claim of the
ineffectiveness of trial counsel in failing to inform Petitioner of his right to testify.

**3.**     **GROUND THREE- DOWNWARD DEPARTURE AT SENTENCING**

Petitioner further asserts that his counsel was ineffective because he failed to move for a downward departure pursuant to United States Sentencing Guideline (U.S.S.G) §5K2.0 based upon the government's "outrageous conduct during the pretrial, trial, and sentencing proceedings, when the government witnesses committed perjury and the prosecutor allowed it to go uncorrected." ECF Dkt. #18 at 17.

Again, in order to demonstrate that counsel's performance was constitutionally ineffective, Petitioner must show that: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland*, 466 U.S. at 687. In the instant case, Petitioner has failed to establish the deficient performance of his counsel as he fails to specify the "outrageous conduct" that the government displayed at the pretrial, trial and sentencing proceedings.  ECF Dkt. #18 at 17.  Petitioner merely mentions alleged perjury by government witnesses and the prosecutor's allowance of such perjury "to go uncorrected." *Id.* However, based upon the undersigned's recommendation that the Court dismiss Petitioner's Ground One assertion as to the perjured testimony argument of Petitioner, the undersigned also recommends that the Court dismiss this assertion as well.  Again, Petitioner fails to identify the government witnesses that allegedly perjured themselves and he fails to show how, where and when the government allowed this allegedly perjured testimony to go uncorrected.

Moreover, if Petitioner would have raised on appeal the argument that the government presented perjured testimony at trial, he would have had to show that "(1) the statements were actually false; (2) the statements made were material; and (3) [the] prosecution knew they were

false." *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995), quoting *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993).  Petitioner has not shown any of the three factors necessary to establish that the government presented perjured testimony at trial and therefore he cannot show that his counsel was ineffective in failing to raise such an argument during trial or at sentencing.

For these reasons, the undersigned recommends that the Court dismiss Petitioner's ground for relief alleging the ineffectiveness of counsel in failing to move the Court for a downward departure based upon the outrageous conduct of the government.

### 4.    GROUND FOUR- DOWNWARD DEPARTURE AT SENTENCING

For this Ground for Relief, Petitioner argues that counsel was ineffective in failing to move for a downward departure pursuant to U.S.S.G. §5K2.0 based upon the "extreme and egregious disparity between the sentence" that he received as compared to the sentences of other individuals involved in the case.  ECF Dkt. #18 at 19.

Applying the *Strickland* test to this ground for relief, the undersigned recommends that the Court find that counsel was not ineffective in failing to raise the disparity in sentences argument advanced by Petitioner.  The Sentencing Guidelines state that "the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." ' U.S.S.G. §§ 5K2.0 (quoting 18 U.S.C. §§ 3553(b)).  The Guidelines provide a list of factors that are not generally considered relevant in determining whether to depart from the guidelines and the Guidelines provide a list of factors that may be relevant in determining whether to depart.  *See* U .S.S.G. §§§§ 5H1.1-.12; U.S.S.G. §§§§ 5K2.1-.12;

-16-

*Koon v. United States*, 518 U.S. 81, 92-96 (1996); *Campbell v. United States*, 364 F.3d 727, 732 - 732 (6th Cir. 2004).

A court sentencing a federal defendant "must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.' " *Koon*, 518 U.S. at 96.  As pointed out by the Sixth Circuit Court of Appeals in *Campbell v. United States*, the disproportionality of sentences is not mentioned in the Guidelines as a basis for departure.  364 F.3d at 732; U.S. Sentencing Guidelines Manual §§ 5H1.1-.12 (listing "certain offender characteristics" relevant "to the determination of whether a sentence should be outside the applicable guideline range").  Accordingly, the undersigned recommends that the Court find that Petitioner's counsel in the instant case was not ineffective for failing to move for a downward departure based upon disproportionality when such a factor is not mentioned in the Guidelines.

Moreover, the Sixth Circuit has held that "departure in order to achieve conformity among co-defendants is not appropriate where there is a basis for disparity."  *United States v. Rutana*, 932 F.2d 1155, 1159 (6th Cir. 1991).  As pointed out by Respondent, Petitioner's co-conspirators, who were separately indicted, decided to provide substantial assistance to the government, which resulted in the downward departure in their sentences, while Petitioner chose to go to trial on his case.  Because Petitioner's circumstances are not the same as those of his co-conspirators, his sentence was reasonably different that those individuals and his counsel was not ineffective for failing to raise this issue at sentencing.

Based upon the above reasons, the undersigned recommends that the Court dismiss Petitioner's fourth ground for relief as meritless.

-17-

**5.      GROUND FIVE - CUMULATIVE EFFECT OF COUNSEL'S ALLEGED ADDITIONAL ERRORS**

Petitioner asserts a myriad of other ineffective assistance of trial counsel claims in this ground for relief.  ECF Dkt. #18 at 20.  He also asserts that the cumulative effect of counsel's numerous errors violated his constitutional right to the effective assistance of counsel.  ECF Dkt. #18 at 20.  The undersigned shall address each of Petitioner's arguments in turn.

**a.      FAILURE TO DISCUSS EVIDENCE AND DEFENSES**

Petitioner first asserts that counsel did not discuss with him all of the reports and discovery that he received from the government or the government's evidence that would be used against Petitioner at trial.  ECF Dkt. #18 at 20.  Petitioner further asserts that counsel failed to discuss or investigate any possible defenses to present on Petitioner's behalf.  *Id.*

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland,* 466 U.S. at 690-91; *see also O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir.1994) ("[A] failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted.").  However, in order to establish the ineffective assistance of trial counsel under *Strickland* for counsel's failure to investigate, the petitioner must assert more than a general allegation. *Strickland,* 466 U.S. at 693.  It is Petitioner who must bear the burden of showing that counsel's actions were not part of a sound trial strategy.  *Id.* at 689.  Petitioner must also show that counsel's lack of investigation "actually had an adverse effect on the defense." *Id.*  In other words, Petitioner shoulders the burden of showing that but for counsel's unprofessional errors, the result of his trial would have been different.  *Id.*

-18-

Petitioner's statements in this ground for relief actually belie his assertion that counsel did not discuss the evidence or defenses with him.  In his ground for relief, Petitioner states that his counsel came to Akron, Ohio on two occasions in order to meet with him and discuss possible defenses.  ECF Dkt. #18 at 20.  Petitioner explains that his retained counsel came to visit him a month after Petitioner hired him and then again a day before his trial.  *Id.*  Petitioner also states that he had a few telephone conversations with his attorney during which counsel encouraged him to plead guilty.  *Id.* at 20-21.  It would seem logical to conclude that if counsel encouraged Petitioner to plead guilty, he must have discussed the evidence that the government had against Petitioner.  And Petitioner himself admits that counsel did discuss defenses with him both in person and on the telephone.  *Id.* at 20.  Accordingly, Petitioner fails to show deficient performance by counsel as counsel did meet with him to discuss his defenses as per Petitioner's own admissions, and counsel did meet with him and discuss a plea that had to be based upon the evidence that Petitioner's counsel had obtained from the government.  Further, the docket shows that Petitioner's counsel requested discovery from the government and the government provided the requested discovery.  Criminal ECF Dkt. #26.  Counsel also filed a motion for an order to supplement voir dire inquiry.  Criminal ECF Dkt. #35.  Counsel further filed a motion to sever Petitioner's trial, a motion to suppress in-court identification, and a motion for the disclosure of witness/informants' statements.  Criminal ECF Dkt. #49.

Based upon Petitioner's own statements and the record of the criminal proceedings, the undersigned recommends that the Court find no merit to Petitioner's ineffective assistance of counsel claim that counsel failed to investigate possible defenses and failed to discuss defenses and the evidence with Petitioner.

-19-

### b.    FAILURE TO CONTACT POTENTIAL WITNESSES

Petitioner also alleges that his trial counsel was ineffective because he failed to contact potential witnesses that would have testified on his behalf.  Petitioner alleges that he gave counsel a list of potential witnesses for his trial and his counsel failed to contact these witnesses, except for Petitioner's wife.  ECF Dkt. #18 at 20.  Petitioner attaches an affidavit from his wife to his reply in which she attests that she personally offered her help to Petitioner's counsel, but he never asked her for help.  ECF Dkt. #22.  She further states that counsel failed to present letters that were written by the persons directly involved in Petitioner's case.  *Id.*

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified to are largely speculative."  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  In order to present an ineffective assistance of counsel claim based upon a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result.  *Malcum v. Burt,* 276 F.Supp.2d 664, 679 (E.D.Mich.,2003) citing *United States ex. rel. Jones v. Chrans,* 187 F.Supp.2d 993, 1009 (N.D.Ill.2002).

Here, Petitioner not only fails to identify the potential witnesses that counsel failed to contact, other than his wife, but he also fails to provide affidavits or support from these individuals as to the testimony that they would have given in order to show that they would have appeared to testify and that their testimony would have been favorable to Petitioner.  As for Petitioner's wife, Petitioner admits that his counsel did contact Petitioner's wife on one occasion.  ECF Dkt. #18 at 20.  Petitioner includes an affidavit from his wife in which she attests that she would have provided help or testified on Petitioner's behalf, but his counsel never asked her to do so.  ECF Dkt. #18, Exhibit

P.  Again, however, Petitioner fails to establish the content of his wife's testimony that would have been presented at trial and he fails to show that the testimony would have affected the outcome of his trial.  Petitioner also included an affidavit from his wife with his reply, but again, the affidavit does not indicate the testimony that Petitioner's wife would have provided and how or why this testimony would have affected the outcome of his trial.  ECF Dkt. #22.

Accordingly, the undersigned recommends that the Court find that "[i]n this case, trial counsel's failure to investigate, interview, or present these potential witnesses does not amount to the ineffective assistance of counsel, because Petitioner has failed to indicate the availability of these purported  witnesses or specify the content of their testimony."  *Malcum,* 276 F.Supp.2d at 679, citing *Dell v. Straub,* 194 F.Supp.2d 629, 650 (E.D.Mich.2002) (citations omitted).  The undersigned therefore recommends that the Court dismiss Petitioner's instant ground for relief alleging the ineffective assistance of counsel for failing to call potential witnesses.

<u>**c.**</u>        <u>**MOTION TO SEVER**</u>

Petitioner next argues that counsel acted ineffectively by failing to argue and present evidence of the mental condition of his co-defendant in support of his motion to sever Petitioner's trial from that of his co-defendant.  ECF Dkt. #18 at 21.  Petitioner asserts that had counsel done so, a reasonable probability existed that the district court would have severed the trials, which would have limited the evidence available against him.  *Id.*

The undersigned recommends that the Court dismiss this assertion.  First, Petitioner fails to identify the "evidence" that would have been limited and thus would have reasonably changed the outcome of his trial.  In fact, Petitioner does not argue that the outcome of the trial would have been different at all in order to meet the prejudice prong of the *Strickland* ineffective assistance of counsel

-21-

test. Moreover, the Sixth Circuit Court of Appeals already considered Petitioner's issues relating to the motion to sever his trial from that of his co-defendant due to his co-defendant's mental condition, although the appeal was in a different context. *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002). A petitioner may not use a §2255 motion "to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 100 (6th Cir. 1996), quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995).

Petitioner argued on direct appeal that the District Court erred in denying his counsel's motion to sever his trial from that of his co-defendant and he was prejudiced by the Court's denial of his counsel's motion to sever because the damaging testimony of witness Roger Williams would not have been admissible against him in a separate trial. *Id.* Petitioner asserted that Williams was the only person, besides government agents, who directly testified as to his guilt and who was not a member of the drug conspiracy with Petitioner and his co-defendant. *Id.* Petitioner argued that the testimony of this witness was damaging to his co-defendant's case and had a spillover effect on his case due to guilt by association. *Id.* Petitioner also asserted that the District Court erred in denying his motion to sever because his co-defendant represented himself and "the district court was aware of Souza's mental condition, having ordered a psychiatric evaluation of Souza, yet allowed Souza to represent himself." *Id.*

The Sixth Circuit Court of Appeals denied Petitioner's direct appeal claims relating to the motion to sever. *Lopez*, 309 F.3d at 972. The Court explained the general rule that individuals that are jointly indicted should be tried together for economic reasons and severance should be granted only when a joint trial would jeopardize a specific trial right of one of the defendants or threaten the reliability of the jury's judgment as to guilt or innocence. The Sixth Circuit specifically stated that:

-22-

"'The fact that a defendant may have a better chance at acquittal if his trial were severed does not require the judge to grant his motion: the defendant must show 'substantial,' 'undue,' or 'compelling' prejudice.'" *Id*. at 971, quoting *United States v. DeFranco*, 30 F.3d 664, 669-670 (6th Cir. 1994).

The Sixth Circuit found that the testimony of Mr. Williams did not substantially prejudice Petitioner's case because Williams did not mention Petitioner's name or his involvement in the conspiracy.  *Lopez*, 309 F.3d at 972.  The Court therefore found that Petitioner failed to show "substantial," "undue," or "compelling" prejudice because of Williams' testimony.  *Id*.  The Court further held that Petitioner failed to show how his co-defendant's self-representation specifically affected his case beyond merely disrupting the flow of the proceedings.  *Id*. at 972.

Accordingly, the Court should dismiss Petitioner's ground for relief as to the ineffective assistance of counsel in failing to present evidence of his co-defendant's mental condition because the District Court was already aware of the condition and the Court of Appeals found that Petitioner had still failed to establish the prejudice necessary in order to show error in denying the motion to sever.  Petitioner therefore fails to establish the deficient performance of counsel in failing to present evidence of the mental condition of Petitioner's co-defendant.  Further, Petitioner fails to establish, much less even mention, that the outcome of his case was prejudiced by counsel's alleged deficient performance.

### d.      FAILURE TO OBJECT TO TAPES AND RECORDINGS

Petitioner additionally asserts that counsel was ineffective because he failed to object, move for a mistrial, or move for a jury instruction after the government used conversations recorded before FBI Special Agent James Hartnett and transcripts of these conversations between Petitioner and

Donald Laster relating to the delivery of kilograms of cocaine.  ECF Dkt. #18 at 21.  Petitioner further asserts that counsel deficiently performed because he failed to object to the insufficient foundation that the government laid for the admission of the tapes which had been altered.  *Id.* Petitioner also asserts that appellate counsel was ineffective in failing to raise this issue on direct appeal.  *Id.* at 22.

The undersigned recommends that the Court find this assertion to be without merit. Petitioner fails to identify the portions of recordings and transcripts in which alterations allegedly occurred.  Further, at trial, Petitioner's counsel specifically asked Special Agent Hartnett if the tapes had been altered and Agent Hartnett unequivocally testified that the contents of the tapes had not been modified or altered.  Criminal ECF Dkt. #120 at 471-473.  In addition, the trial transcript reflects that the government laid a proper foundation for admission of the tapes.  Criminal ECF Dkt. #119 at 163-165.

For the above reasons, the undersigned recommends that the Court find that Petitioner's ineffective assistance of counsel claims relating to altered or modified tapes and recordings are without merit.  As a result of this recommendation, the undersigned consequently recommends that the Court find that appellate counsel was not ineffective in failing to raise the ineffectiveness of trial counsel in failing to object, move for a mistrial, or move for a jury instruction as to the recorded conversations before FBI Special Agent James Hartnett and transcripts of these conversations between Petitioner and Donald Laster relating to the delivery of kilograms of cocaine.

-24-

**e.      FAILURE TO INVESTIGATE AND PRESENT EVIDENCE OF OWNERSHIP OF HONDA ACCORD**

In this assertion, Petitioner complains that counsel was ineffective in failing to investigate the ownership of the blue Honda Accord that was used by individuals involved in the drug conspiracy in which Petitioner was convicted.  ECF Dkt. #18 at 22.  Petitioner asserts that had counsel investigated the ownership of the car before trial, he would have discovered that Petitioner had nothing to do with the ownership of the car and he could have used this evidence in order to impeach the credibility of witnesses Donald Laster and Robert Marshall.  *Id.*

The record reflects that counsel thoroughly cross-examined Donald Laster and Robert Marshall concerning their credibility by raising their criminal histories and their prior inconsistent statements.  Criminal ECF Dkt.#119 at 167-179, 185-189, 193; 233-236, 239-240.  Petitioner fails to establish that his counsel performed deficiently by not attacking the credibility of Laster and Marshall by inquiring about the ownership of the Blue Honda Accord.  Further, even if he had established that counsel deficiently performed, Petitioner fails to establish, much less even mention, how this performance affected the prejudice factor of *Strickland*.  Petitioner's assertion that Mr. Marshall bought the blue Honda Accord does not negate the testimony that Petitioner was using the car for illegal drug trafficking activity.  Criminal ECF Dkt. #119 at 85-86, 93-95, 160-164, 244-248, 271-274.

Accordingly, the undersigned recommends that the Court dismiss this claim because Petitioner has failed to establish the *Strickland* prongs of ineffective assistance of counsel in failing to challenge the credibility of Laster and Marshall with inquiry into the ownership of the blue Honda

-25-

**f.** **DOWNWARD DEPARTURE IN SENTENCE BASED UPON EXTRAORDINARY FAMILY CIRCUMSTANCES**

Petitioner's final complaint regarding the ineffective assistance of counsel alleges that counsel was ineffective because he failed to seek a downward departure in sentencing based upon Petitioner's family situation.  ECF Dkt. #18 at 22.  Petitioner explains that his wife and small children rely almost entirely upon him for their support and incarceration would have a "traumatic, devastating impact on their ability to obtain even the most basic necessities of life such as food, clothing and shelter."  *Id.*

The Sixth Circuit Court of Appeals generally disapproves of downward departures in sentencing based upon family ties and responsibilities.  *United States v. Reed*, 264 F.3d 640, 654 (6th Cir. 2001).  The United States Sentencing Guidelines list family ties and responsibilities as a discouraged factor, that is, a factor that is "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." U.S. Sentencing Guidelines Manual ch. 5, pt. H, intro. comment.  Departures based upon discouraged factors, including family ties and responsibilities, are to be applied only in "exceptional cases." *Id*.  The United States Supreme Court has held that "[i]f the special factor is a discouraged factor, ... the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon v. United States,* 518 U.S. 81, 96 (1996).

In *Reed,* the Sixth Circuit reversed a district court's departure downward of 13 levels in sentencing in order to account for the defendant's family circumstances because the defendant, an aunt of five nieces and nephews, played an important role in the raising of these relatives, four who were still minors. *Id.*  The *Reed* Court explained that:

-26-

> In light of this and other circuits' reluctance to permit downward departures for single parents with young children, even for those who provide financial and emotional support for their children, and even when the children are likely to be placed in foster care pending their parent's incarceration, we do not believe that [the defendant] has presented any evidence to demonstrate that her family circumstances are exceptional.

*Id*.

In *United States v. Marine*, the Sixth Circuit upheld a district court's downward departure of ten levels based upon the defendant's family responsibilities. No. 02-3317, 94 Fed. Appx. 307, 2004 WL 771851 (6th Cir. Apr. 8, 2004), unpublished. The Court affirmed the district court's findings that Marine's family situation was distinguishable from *Reed* because Marine was the biological mother of three minor children, one of whom had a child for whom Marine cared, Marine lived with her children and grandchild and provided their financial support, no evidence existed to show that Marine took extended vacations away from her children and grandchild, Marine's husband was sentenced to five years in prison, and Marine had no family members or friends to take care of her children. *Id*. at **4-5. The Court agreed with the district court's finding that although none of these factors alone rendered Marine's case any more extraordinary than any other situation where a parent is incarcerated and must leave his or her children, the factors coalesced in order to render Marine an "irreplaceable" caretaker of the children and grandchild. *Id.* at **5.

Comparing Petitioner's case to both *Reed* and *Marine*, as well as other cases in the Circuit, the undersigned recommends that the Court find that Petitioner did not suffer the ineffective assistance of counsel when counsel failed to move for a downward departure based upon Petitioner's family situation. Petitioner is not a single parent. His wife is present and able to care for the children. Further, the undersigned does not observe and Petitioner otherwise fails to show that he is an "irreplaceable" caretaker of the children as found in *Marine*. Moreover, Petitioner fails to show

that other family members are unavailable or unwilling to care for the children, especially in light of the fact that the mother of the children is present and able to care for them.  The fact that Petitioner's wife and children "may suffer does not give rise to an extraordinary circumstance that should be reflected in sentencing."  *United States v. Calhoun*, 49 F.3d 231, 237 (6th Cir. 1995). Accordingly, counsel did not deficiently perform by failing to move for a downward departure in sentencing based upon Petitioner's non-extraordinary family circumstances.

For these reasons, the undersigned recommends that the Court deny this ground for relief.

### g. CUMULATIVE EFFECT OF COUNSEL'S ALLEGED ERRORS

Because the undersigned has recommended that the Court dismiss each of Petitioner's asserted claims regarding the ineffective assistance of counsel, a cumulative effect analysis of counsel's errors is not necessary as counsel did not deficiently perform as alleged by Petitioner and/or counsel did not prejudice the outcome of Petitioner's trial.  Accordingly, the undersigned recommends that the Court dismiss Petitioner's claim that the cumulative effect of counsel's alleged ineffectiveness "rendered him ineffective."  *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

### B. GROUND SIX - DUE PROCESS VIOLATION

In his final ground for relief, Petitioner asserts that his conviction and sentence violated his right to due process of law under the Fifth Amendment of the United States Constitution.  ECF Dkt. #18 at 23.  Petitioner complains that his due process rights were violated because the government failed to allege all elements of the criminal violations for which he was convicted in the indictment. *Id.*  He also alleges that his conviction and sentence violated his due process rights because the drug quantity was not submitted to the jury to determine.  *Id.*  Petitioner also contends that the "judge

-28-

lacked knowledge of the available range of sentencing discretion under applicable law." *Id.*

In this ground for relief, Petitioner is essentially raising a challenge pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the United States Supreme Court held that any fact that increases the penalty for a crime above the statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt.  However, Petitioner already litigated this issue by way of direct appeal to the Sixth Circuit, who rejected this issue on direct appeal.  *Lopez*, 309 F.3d at 970.  A petitioner may not use a §2255 motion "to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 100 (6th Cir. 1996), quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995).  In Petitioner's direct appeal, the Sixth Circuit determined that although the district court's sentencing of Petitioner to 360 months exceeded the twenty-year maximum penalty under 21 U.S.C. § 841(b)(1)(C) and thus violated *Apprendi*, the violation of *Apprendi* was harmless error.  The Court found that only harmless error resulted because the proper resentencing of Petitioner under *Apprendi* on both the conspiracy count and the distribution count for which he was convicted, "both of which carry a statutory maximum of twenty years, [they] would run consecutively until reaching 360 months (240 months on the conspiracy count and 120 months on the distribution count), within the combined statutory maximum of forty years." 209 F.3d at 970.  Petitioner presents no exceptional circumstances that would justify relitigation of this claim before this Court.

However, in his reply to Respondent's response to his §2255 motion, Petitioner asserts that *Blakely v. Washington,* 124 S.Ct. 2531 (2004) applies to his case.  ECF Dkt. #21 at 4-9.  Petitioner asserts that this Court should retroactively apply *Blakely* to his case and find that he was denied the due process of law and his Sixth Amendment rights to notice and a trial by jury because his

-29-

sentenced was increased by facts not charged in the indictment, not submitted to a jury, not proven beyond a reasonable doubt and not admitted by him.  *Id*. at 4-6.

In *Blakely*, the United States Supreme Court invalidated the sentencing system of the State of Washington after finding that the trial court erred in sentencing a defendant to ninety months of imprisonment, which was well over the statutory maximum of the standard range under Washington law.  124 S.Ct. 2531, 2543 (2004).  The Court expanded its holding in *Apprendi* and found that a defendant's Sixth Amendment right to a trial by jury is violated by a sentencing system like that of Washington that allows a judge to apply factors to enhance a defendant's sentence above the sentencing guideline maximum without those enhancement factors being proven to a jury beyond a reasonable doubt. *Blakely*, 124 S.Ct. at 2537-2539.

In the instant case, Judge Gwin did make upward adjustments to Petitioner's sentence.  Judge Gwin found that Petitioner was involved in transactions which totaled in excess of 150 kilograms of cocaine and he found that Petitioner was an organizer and/or leader of the transactions.  Criminal ECF Dkt. #126 at 12-14.  Judge Gwin set Petitioner's base offense level at 38 and increased the offense level by four levels based upon his findings that Petitioner was an organizer of this extensive criminal activity which involved five or more participants.  *Id*. at 15.  The Court also specifically found that Petitioner directed all of the sales, facilitated all of the transactions regarding those sales, and/or directly participated in those sales.  *Id.*  Accordingly, the Court sentenced Petitioner to 360 months of imprisonment based upon the findings that Petitioner's offense level was 42 and his criminal history category was II.  *Id.*

However, the undersigned recommends that the Court find no merit to Petitioner's *Blakely* assertion for two reasons.  First, the undersigned recommends that the Court find that *Blakely* does

-30-

not apply to the United States Sentencing Guidelines.  While invalidating the State of Washington's

sentencing system, the *Blakely* Court specifically noted that:

> The United States, as *amicus curiae,* urges us to affirm. It notes differences between
> Washington's sentencing regime and the Federal Sentencing Guidelines but questions
> whether those differences are constitutionally significant. See Brief for United States
> as *Amicus Curiae* 25-30. The Federal Guidelines are not before us, and we express
> no opinion on them.

*Blakely*, 124 S.Ct. at 2538, fn.9.  The Court did not make *Blakely* applicable to the United States

Sentencing Guidelines, the Guidelines under which Petitioner was sentenced.  Therefore, the United

States Supreme Court has not spoken on the issue of applicability of its holding in Blakely to the

United States Sentencing Guidelines.  And while the Sixth Circuit Court of Appeals recently held

on the basis of *Blakely* that

> The mandatory system of fixed rules calibrating sentences automatically to facts
> found by judges must be displaced by an indeterminate system in which the Federal
> Sentencing Guidelines in fact become "guidelines" in the dictionary-definition sense
> ("an indication or outline of future policy," Webster's International Dictionary (3d
> ed. 1963)).  The "guidelines" will become simply recommendations that the judge
> should seriously consider but may disregard when she believes that a different
> sentence is called for.

*United States v. Montgomery*, ---F.3d---, 2004 Fed.App. 0226P, 2004 WL 1562904 (6th Cir. July 14,

2004), the Court shortly thereafter vacated this decision upon the granting of a rehearing en banc.

*United States v. Montgomery*, ---F.3d---, 2004 Fed.App. 0226P, 2004 WL 1562904 (6th Cir. July 19,

2004).  The Court then dismissed the case upon Appellant's motion to dismiss upon which the

Government agreed.  *United States v. Montgomery*, 2004 WL 1637660 (6th Cir. July 23, 2004).

Accordingly, at this point, no caselaw pertinent to this jurisdiction makes *Blakely* applicable to the

United States Sentencing Guidelines.

-31-

Second, even if *Blakely* would apply to Petitioner's case at this point, the United States Supreme Court did not state that *Blakely* should be retroactively applied.  In fact, on the same day that *Blakely* was decided, the Court held in *Schriro v. Summerlin*, 124 S.Ct. 2519 (2004) that its decision in *Ring v. Arizona*, 536 U.S. 584 (2002) which, like *Blakely*, expanded its *Apprendi* decision, did not retroactively apply to death penalty cases that were already final on direct review. In *Ring*, the Supreme Court held that "a sentencing judge, sitting without a jury, [cannot] find an aggravating circumstance necessary for imposition of the death penalty." 536 U.S., at 609, 122 S.Ct. 2428.  Rather, the Court held, "the Sixth Amendment requires that [those circumstances] be found by a jury." *Id.*

In *Summerlin*, the Supreme Court discussed retroactivity and the applicability of its decisions that result in a "new rule." 124 S.Ct. at 2522-2523.  The Court reiterated its general holding that a new rule applies to all criminal cases that are still pending on direct review.  *Id.* at 2522, citing *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987).  The Court then explained that its new rule decisions apply in only limited circumstances to convictions that are already final:

> New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, see *Bousley v. United States,* 523 U.S. 614, 620-621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, see *Saffle v. Parks,* 494 U.S. 484, 494-495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Teague v. Lane,* 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). [FN4] Such rules apply retroactively because they "necessarily carry a significant *2523 risk that a defendant stands convicted of 'an act that the law does not make criminal' " or faces a punishment that the law cannot impose upon him. *Bousley, supra,* at 620, 118 S.Ct. 1604 (quoting *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)).

> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle, supra,* at 495, 110 S.Ct. 1257 (quoting *Teague,* 489 U.S., at 311, 109 S.Ct. 1060). That a new procedural rule is "fundamental" in some abstract sense is not enough; the rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished." *Id.,* at 313, 109 S.Ct. 1060 (emphasis added). This class of rules is extremely narrow, and "it is unlikely that any ... 'ha[s] yet to emerge.' " *Tyler v. Cain,* 533 U.S. 656, 667, n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (quoting *Sawyer v. Smith,* 497 U.S. 227, 243, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)).

*Summerlin*, 124 S.Ct. at 2523.  The Court then distinguished rules of substantive law from rules of procedure:

> A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. *See Bousley, supra,* at 620-621, 118 S.Ct. 1604 (rule "hold[s] that a ... statute does not reach certain conduct" or "make[s] conduct criminal"); *Saffle, supra,* at 495, 110 S.Ct. 1257 (rule "decriminalize[s] a class of conduct [or] prohibit[s] the imposition of ... punishment on a particular class of persons"). In contrast, rules that regulate only the *manner of determining* the defendant's culpability are procedural. *See Bousley, supra,* at 620, 118 S.Ct. 1604.

*Id.*

Applying these new rule of law principles, the Court classified its holding in *Ring* as that of a procedural rule because the holding did not alter the conduct that the State of Arizona had criminalized.  *Summerlin,* 124 S.Ct. at 2523.  Rather, the Court held,  its *Ring* holding altered "the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules, a conclusion we

have reached in numerous other contexts." *Id.* (citations omitted).  Further, the Court rejected the argument that its *Ring* holding was a "watershed rule of criminal procedure" because juries are more accurate factfinders than judges.  *Id.* at 2525.  The Court found that the question was not whether juries are more accurate factfinders than judges, but rather "whether judicial factfinding so '*seriously* diminishe[s]' accuracy that there is an 'impermissibly large risk' of punishing conduct the law does not reach. *Teague, supra,* at 312-313, 109 S.Ct. 1060 (quoting *Desist v. United States,* 394 U.S. 244, 262, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)) (emphasis added)." *Id.*  The Court found that "the evidence [was] simply too equivocal to support that conclusion." *Id.*

The United States Supreme Court's holding in *Blakely* is identical in nature to the holding in *Ring.*  Both decisions were expansions of the Court's *Apprendi* decision and both deal with the requirement that a jury and not judges make certain factual determinations that enhance a defendant's sentence.  Accordingly, on the basis of *Summerlin,* the undersigned recommends that the Court find that the *Blakely* decision does not retroactively apply to Petitioner's case.

### III.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned finds Petitioner's grounds for relief not well taken and subsequently recommends that this Court dismiss all of Petitioner's claims *with prejudice.*

Dated: July 29, 2004                                    /s/George J. Limbert
                                                        GEORGE J. LIMBERT
                                                        UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).