**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **JOSEPH JESUS LOPEZ,** | ) | **CASE NO. 1:04CV391** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |


**CHRISTOPHER A. BOYKO, J:**

This motion comes before the Court on the Petitioner's 28 U.S.C. § 2255 habeas petition.

Upon careful consideration and review, the Court rejects his petition for an evidentiary hearing,

and denies a sentencing rehearing on the basis of his U.S. v. Booker challenge.

**I. FACTUAL BACKGROUND**

On October 21, 1998, Petitioner and a co-defendant were indicted for conspiring to

possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846.  Petitioner was also

separately indicted for distributing approximately 10 kilograms of cocaine in violation of 21

U.S.C. § 841(a)(1) and (b)(1)(A)(ii).

1

On June 21, 1999, Petitioner, through counsel, filed a motion to sever his trial from that of his co-defendant.  The District Court denied Petitioner's motion and a joint jury trial was held, with Petitioner represented by counsel and his co-defendant representing himself with counsel on stand-by.   On July 28, 1999, the jury found Petitioner and his co-defendant guilty on all charges in the indictment.  On November 2, 1999, the Court sentenced Petitioner to a concurrent term of 360 months of imprisonment followed by five years of supervised release and a $25,000 fine and a $200.00 special assessment. The Court sentenced Petitioner's co-defendant to life in prison and a $100.00 special assessment.

On November 9, 1999, Petitioner filed a notice of appeal to the Sixth Circuit Court of Appeals.  In his appellate brief, Petitioner alleged, *inter alia*, that his sentence must be vacated pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000) because the amount of cocaine involved in the conspiracy was not alleged in the indictment or submitted to the jury at trial. United States of America v. Lopez, 309 F.3d 966 (6th Cir. 2002).  Petitioner also asserted that the district court erred in denying his motion to sever his trial from that of his co-defendant.  Id.  On October 29, 2002, the Sixth Circuit affirmed Petitioner's conviction, fully addressing each of his assignments of error.  Id.; Lopez, 309 F.3d 966.

Petitioner  filed a petition for a writ of certiorari in the United States Supreme Court. On March 3, 2003, the United States Supreme Court denied his petition.  Lopez v. United States, 537 U.S. 1244 (2003).

On February 12, 2004, Petitioner, *pro se*, filed his original motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  ECF Dkt. #1.  The motion was filed with the

Court on February 26, 2004.  Id.  On February 27, 2004, the Magistrate Judge received the referral of this case.

On March 23, 2004, Respondent filed a Motion to Compel Petitioner's compliance with Local Rule 7.1 regarding page limitations and/or a motion to strike those portions of the filing that do not comply with the Local Rule, a motion to exceed the page limitations pursuant to Local Rule 7.1, and a motion to quash Petitioner's request for discovery.  Respondent also filed a response in opposition to Petitioner's § 2255 motion. On April 9, 2004, the Magistrate Judge granted Respondent's Motion to Compel Petitioner to comply with the Local Rule's page limitations and ordered petitioner to file an amended § 2255 motion that complied with the Local Rules, denied Respondent's motion to exceed the page limitations as premature, and granted Respondent's motion to quash Petitioner's request for discovery.

On April 26, 2004, Petitioner filed a motion requesting that the Magistrate Judge reconsider the April 9, 2004 Order and allow him to file an oversized brief.  He also filed a "traverse" to Respondent's response, a "Statement of undisputed issues of material fact," and supplements to his §2255 motion.  On May 4, 2004, Respondent filed a motion to strike Petitioner's noncompliant "traverse."

On May 17, 2004, the Magistrate Judge granted Petitioner's Motion to Reconsider and ordered him to file an amended §2255 motion, consisting of no more than forty pages of double-spaced, type-written text.  The Magistrate Judge further ordered Respondent to file an amended response to the motion and granted Respondent's prior motion to exceed the page limitations of Local Rule 7.1.  The Court also granted Respondent's motion to strike the Petitioner's "traverse," but permitted Petitioner to file a reply consisting of no more than twenty pages of

double-spaced typewritten text that was responsive to Respondent's response in opposition to Petitioner's amended §2255 motion.

On June 14, 2004, Petitioner filed the instant amended §2255 motion raising the following grounds for relief:

A. **Ground one**: Ineffective Assistance of Counsel During the Trial Process, When Counsel Failed To Object Or Move For Mistrial Due To The "Bolstering" And "Vouchering" By The Prosecutor For Witnesses Victoria Webster and Duran Banner, As Well As The Prosecutor's References To Matters Outside The Trial Record And the Uncorrected And Repeated Perjury By Government Witnesses.

B. **Ground two**: Ineffective Assistance Of Counsel During The Trial Process When Counsel Failed To Advise Him, And Affirmatively Misadvised Him, As To His Constitutional Right To Testify.

C. **Ground three**: Ineffective Assistance of Counsel Mr. Lopez Was Prejudiced By The Objectively Unreasonable Performance of Counsel During The Sentencing Process, When Counsel Failed to Move For a Downward Departure Under United States Sentencing Guidelines (U.S.S.G.) § 5K2.0 Due To Outrageous Conduct By The Government During the Pretrial, Trial, And Sentencing Proceedings.

D. **Ground four**: Ineffective Assistance Of Counsel Sentencing Process, When Counsel Failed To Make A Proper Objection To Mr. Lopez's Sentence And Move For Downward Departure Under U.S.S.G. § 5K2.0 Due To Serious Disparity In His Sentence.

E. **Ground five**: Ineffective Assistance Of Counsel Due To The Cumulative Impact of Multiple Deficiencies Or Errors By Counsel During the Pretrial, Trial, Sentencing, And Direct Appeal Process.

F. **Ground six**: Denial Of Due Process Of Law.

On June 29, 2004, Respondent filed a response in opposition to Petitioner's amended § 2255 motion.   Petitioner filed a reply to this response in opposition on July 6, 2004.   Petitioner also filed a supplemental argument on the application of United States v. Booker on March 1, 2005.

4

## II. STANDARD OF REVIEW

A federal inmate is able to collaterally attack his conviction or sentence through a motion brought under § 2255, the sole means for making such a challenge. In re Gregory, 181 F.3d 713, 714; See United States v. Davis, 417 U.S. 333 (1974); United States v. Cohen, 593 F.2d 766, 770 (6th Cir. 1979). For an inmate to be successful on a §2255 motion made on the basis of constitutional error, the Petitioner must show an error made of constitutional magnitude had a substantial and injurious effect or influence on the proceedings. United States v. McNeil, 72 F. Supp. 2d 801, 803 (N.D. Ohio 1999), citing United States v. Watson, 165 F.3d 486, 488 (6th Cir. 1999)(citing Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993)). For an inmate to succeed on a §2255 motion. not made on the basis of constitutional error, the Petitioner must show the existence of a, "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990)(citing United States v. Hill, 368 U.S. 424, 428 (1968)).

## III. LAW AND ANALYSIS

### A.     INEFFECTIVE ASSISTANCE OF COUNSEL

Ineffective counsel claims are governed by the Strickland v. Washington, 466 U.S. 668 (1984) standard, in which the United State Supreme Court propagated a two-prong test which would, if met, warrant reversal of a conviction: First, counsel's performance must fall below an objective standard of reasonableness, and second, there is a reasonable probability that counsel's deficient performance prejudiced the prisoner, resulting in an unreliable or fundamentally unfair outcome of the proceeding. Id. at 687-689. The reasonable probability issue is the focus of both

parties to this habeas motion.  A reasonable probability is, "a probability sufficient to undermine confidence in the outcome."  Id. at 694.  In addition, the review of defense counsel is done with a presumption of reasonableness that must be overcome to meet the Strickland test: "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 688-689.  Decisions that, "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel; tactical decisions must be particularly egregious before they offer a basis for recovery.  Michel v. Louisiana, 350 U.S. 91, 101 (1955); Martin v. Rose, 744 F.2d 1245, 1249 (6th Cir. 1984).  Petitioner argues for a reasonable probability standard, that, " [w]here through 'hindsight' the Court can determine that, but for the errors of counsel, there is a 'reasonable probability' of a different outcome, a probability sufficient to 'undermine confidence' in the challenged proceedings, the defendant has affirmatively proven prejudice."  Petitioner's habeas petition at 58 citing Strickland, 466 U.S. at 694-695.

In addition, Petitioner contests the Magistrate's Report and Recommendation asserting that Local Rule 7.1 put him in a "Catch-22".  Much of the Magistrate's Report and Recommendation, in recommending that Petitioner's motion be rejected with prejudice, rejects Petitioner's arguments as too conclusory.  Petitioner responds in his objection that in his first motion, he had presented full allegations with complete information, that these allegations were anything but conclusory, and would allow grounds for a reversal.  However, Respondent filed a motion, which was granted, to redact and limit the initial motion in accordance with Local Rule 7.1.  As a result, Petitioner contends the Local Rules prevented him from fully making his case:

> The redaction and resulting confusion as to the basis of Mr. Lopez' claims should not be weighed against him, however.  Certainly it's unfair to order a pro se litigant to limit how

6

many facts he can present and then to penalize him for following the order of the court. In particular, Mr. Lopez would respectfully point out that Exhibits D, which were ordered stricken by the Magistrate Judge, did explain in minute detail the facts underlying Mr. Lopez' claims, but these facts were not available to the court because they were stricken. Catch 22.

Petitioner's argument fails because: the attack he presents is one against the Local Rules themselves, which were designed to promote administrative expedience and convenience, while still permitting Petitioner to present his case fully.  The attack therefore is too broad; to abdicate the Local Rules would mean that no restrictions would be placed on the length of petitions. Petitioner merely could have been more concise in stating his point; accepting his argument would encourage exceedingly long petitions requiring additional court time and effort at the expense of conciseness and clarity; and, it presents a slippery slope in which any argument that fails may have failed because Petitioner was denied the opportunity to fully present his/her case. Such an argument fails to consider the Court's legitimate policy concerns of requiring precise and concise petitions and motions.  Limitless briefs would necessarily tax the courts ability to render opinions in a reasonable time frame and is inapposite to sound public policy; lastly, the court has an express right to propagate local rules in the interests of social policy pursuant to Federal Rule of Civil Procedure 83.

Generally, the <u>Strickland</u> standard controls all following discussion of ineffective assistance of counsel.

**1.  Ground One - Ineffective Counsel - Failure to Object**

**a.        Failure to Object to Vouching and/or Bolstering**

The Magistrate Judge agrees that, "trial counsel's failure to object to a prosecutor's improper vouching or bolstering can constitute the ineffective assistance of counsel when the failure to object constitutes deficient performance that prejudices the petitioner's case because

7

the result at trial or on appeal would likely have been different"–a "reasonable probability" standard.  Strickland, 466 U.S. at 694; Campbell v. United States, 364 F.3d 727, 736 (6th Cir. 2004).

A government prosecutor would be vouching for a witness if he indicates a personal belief in a witness's credibility; doing so would place the "prestige of the office of the United States Attorney behind that witness..."  United States v. Francis, 170 F.3d 546, 550-551 (6th Cir. 1999).

A government prosecutor would be bolstering a witness if "the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.  Id.

However, as noted in the Magistrate Judge's Report and Recommendation, none of the prosecutor's remarks constitute a level of impropriety through vouching or bolstering.  Hence, not objecting to the prosecutor's comments would not constitute ineffective counsel.   Use of the phrase "I submit" in the context of "I submit to you that that is credible" does not rise to vouching or bolstering, as noted by the Sixth Circuit.  United States v. Covington, 7 Fed.Appx. 386, 390 (6th Cir. 2001), unpublished.  In addition, the Magistrate Judge is correct in saying that "I believe the evidence is there that we have proven the charges against both defendants beyond a reasonable doubt" speaks merely to the prosecutor's belief that he had met his burden in the case, not that he was vouching for a witness.

Moreover, even if the remarks did constitute vouching or bolstering, they would still be insufficient to create a reasonable probability of a different outcome under Strickland.  The weight of the testimonies of five witnesses form a reasonable basis for conviction regardless of the alleged prosecutorial tactics.  In addition, there existed tapes and transcripts of a conversation

8

with Laster, a witness, regarding the cocaine.  On these bases, regardless of alleged prosecutorial misconduct, a conviction could reasonably be upheld.  Hence, it is not reversible error for Petitioner's counsel to fail to object to the alleged vouching or bolstering.

### b.  Failure to Object to Prosecutor's References to Matters Outside of the Record

The Magistrate Judge recommends that because Petitioner failed to specify or otherwise identify the prosecutor's references that were outside of the record, this argument must fail.  In his objection, Petitioner, while asserting that his redaction is to blame, fails to introduce any facts or instances of the prosecutor's references to "matters outside of the record."  Even without the imminent threat of redaction or limitation in his objection to the Magistrate's Report and Recommendation, Petitioner fails to meet his burden to specifically state a claim of such instances.

Because there are no bases or facts behind these allegations, the <u>Strickland</u> standard cannot be applied in a vacuum, and therefore, this claim must fail.

### c. Failure to Object to Perjured Testimony

Consistent with the recommendation of the Magistrate Judge, there is no evidence of perjured testimony, only proof that defense counsel did his best to discover whether the government witnesses committed perjury.  Petitioner only refers to the trial transcript recording the prosecutor's closing argument.  However, as the Magistrate Judge notes, "[p]etitioner's counsel vigorously cross-examined the government witnesses, emphasizing their prior criminal convictions...and the fact that some of the witnesses...would receive reduced sentences in exchange for their testimony against Petitioner." (Report and Recommendation at 12.)  As a result, the claim of ineffective counsel as it pertains to perjured testimony is rejected.

9

As in 1b the Court will not use the Strickland analysis since there is no evidence of prosecutorial misconduct.  Nor does the Court need to address Strickland in order to reject such a broad and vaguely-defined claim.

### 2.    Ground Two - Ineffective Counsel - Failure to Advise Petitioner of Right to Testify

Petitioner alleges his trial counsel did not inform him of his constitutional right to testify nor of his right to decide whether to take the stand.  Courts have held that even though Petitioner has a constitutional right to testify on his own behalf, a "barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It is just too facile a tactic...to succeed. Some greater particularity is necessary."  McCoy v. Bock, No. 01-10052-BC, 2003 WL 22994984, *11 (E.D. Mich.)(Dec. 17, 2003), unpublished, quoting Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991).

Petitioner's mere assertion that his attorney failed to inform him of his right to testify is, alone insufficient for any redress under Strickland.

### 3.    Ground Three - Downward Departure at Sentencing

Petitioner argues his counsel was ineffective because he failed to move for a downward departure pursuant to United States Sentencing Guidelines § 5K2.- based upon the government's "outrageous conduct during the pretrial, trial, and sentencing proceedings, when the government witnesses committed perjury and the prosecutor allowed it to go uncorrected."

Petitioner does not specify where the perjury occurred, the witnesses who perjured themselves, nor how and when the perjury occurred.  This absence of pertinent evidence forecloses an analysis under Strickland, therefore, this claim must fail.

10

### 4. Ground Four - Downward Departure at Sentencing

Petitioner alleges  counsel was ineffective for failing to move for a downward departure pursuant to U.S.S.G. § 5K2.0 based upon the "extreme and egregious disparity between the sentence"  he received  compared to the sentences of other individuals involved in the case.

Strickland may be applied  to reject Petitioner's claim.  Had counsel objected and moved for a downward departure, it would not have changed the outcome, and Petitioner has offered no evidence his sentence would have been different.  The U.S.S.G. offer reasonable guidance as to ranges of sentences based upon "aggravating or mitigating circumstance[s]."  U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).  While Petitioner did receive a larger sentence than others, the co-conspirators offered help to the government through their testimonies, which led to a downward departure. With a sound basis for  disparity in sentences, it is more likely than not that Petitioner's motion would have been rejected anyway, and therefore, this claim is rejected as well.

### 5. Ground Five - Cumulative Effect of Counsel's Alleged Additional Errors

#### a. Failure to Discuss Evidence and Defenses

While counsel does indeed have a responsibility under  Strickland  to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," Strickland, 466 U.S. at 690-691, the Petitioner needs to make a more specific allegation.  Strickland, 466 U.S. at 693.

In fact, Petitioner's counsel–by Petitioner's own admission–came to Akron, Ohio on two occasions to discuss possible defenses.  In addition, Petitioner's counsel encouraged Petitioner to plead guilty, which is usually the result of a fairly reasoned and well-thought out decision.  Id. Without more, this claim also fails.

11

### b.        Failure to Contact Potential Witnesses

Petitioner alleges his trial counsel was ineffective because he failed to contact potential witnesses who would have testified on his behalf.  Only one witness is mentioned –  Petitioner's wife.  Petitioner failed to present a list of witnesses whose testimony would demonstrate a reasonable probability of changing the outcome.  Malcum v. Burt, 276 F.Supp.2d 664, 679 (E.D.Mich., 2003), citing United States ex rel. Jones v. Chrans, 187 F.Supp.2d 993, 1009 (N.D.Ill., 2002).

Petitioner offered an affidavit from his wife in which she attests she offered help to Petitioner's counsel, but counsel never asked for her help. The Magistrate Judge notes Petitioner did not show the content of his wife's testimony, and nor how such testimony would have affected the outcome of the trial.  Since Petitioner cannot show a reasonable probability of a different outcome, this claim fails the Strickland  test and is rejected.

### c.        Motion to Sever

Petitioner claims counsel acted ineffectively by failing to argue and present evidence of his co-defendant's mental condition in support of his motion to sever Petitioner's trial.  This argument fails for two reasons.

First, the Petitioner did not identify any "evidence" that would have been omitted had the trial been severed, which would then have a reasonable probability of changing the outcome of Petitioner's trial.  Second, the Sixth Circuit Court of Appeals had already considered–and rejected–Petitioner's motion to sever his trial due to his co-defendant's mental condition.  Lopez, 309 F.3d 966, 971 (6th Cir. 2002).  Even though the severance issue was disposed of on direct appeal, the Magistrate Judge found no evidence to support Petitioner's claim and the Court concurs.  Therefore, this argument fails.

12

### d.      Failure to Object to Tapes and Recordings

Petitioner argues that counsel was ineffective because he failed to object, move for a mistrial, or move for a jury instruction after the government used conversations recorded between Petitioner and Donald Laster relating to the delivery of kilograms of cocaine.  However, Petitioner never states which portions of the recordings and transcripts were allegedly altered, and at trial FBI Agent Hartnett, under oath, testified that the contents of the tapes had not been modified or altered.  For these reasons, this argument is without merit.

### e.  Failure to Investigate and Present Evidence of Ownership of a Honda Accord

Petitioner asserts counsel was ineffective in failing to investigate the ownership of the blue Honda Accord  used by individuals involved in the drug conspiracy leading to Petitioner's conviction.  However, the record shows counsel cross-examined Donald Laster and Robert Marshall concerning their overall credibility – which directly relates to the ownership of the car – by raising their criminal histories and prior inconsistent statements.

Moreover, Petitioner fails to show in his motion how counsel's performance would have changed the outcome of the trial under the Strickland standard.  Therefore, this claim is rejected.

### f.      Downward Departure in Sentence Based Upon Extraordinary Family Circumstances

Petitioner's final complaint regarding the ineffective assistance of counsel alleges counsel failed to seek a downward departure in sentencing based upon Petitioner's family situation – claiming that his wife and small children rely almost entirely upon him for their support.

The Sixth Circuit Court of Appeals generally disapproves of downward departures in sentencing based upon family ties and responsibilities.  United States v. Reed, 264 F.3d 640, 654

13

(6th Cir. 2001).  Family ties and responsibilities is a factor, "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range," only to be applied in "exceptional cases."  U.S. Sentencing Guidelines Manual ch. 5, pt. H, intro. comment.

In <u>United States v. Marine</u>, the Sixth Circuit upheld a district court's downward departure of ten levels based upon the defendant's family responsibilities.  No. 02-3317, 94 Fed. Appx. 307, 2004 WL 771851 (6th Cir., Apr. 8, 2004), unpublished.  Marine was the biological mother of three minor children, one of whom had a child.  <u>Id.</u> at **4-5.  Marine lived with all her children and her grandchild, providing their financial support.  <u>Id.</u>  Her husband was sentenced to five years in prison, and Marine had no family members or friends to take care of her children.  <u>Id.</u>  These factors–while each one taken alone was insufficient–together made Marine an "irreplaceable" caretaker of the children and grandchild.  <u>Id.</u> at 5.

The facts of the present case are not as compelling as <u>Marine</u>.  By contrast, Petitioner is not a single parent, his wife is present and able to care for the children, and Petitioner offers no evidence that shows that, as in <u>Marine,</u> other family members are unavailable or unwilling to care for the children.

Hence, Petitioner's family circumstances are not sufficient grounds for a downward departure.

> **g.    Cumulative Effect of Counsel's Alleged Errors**

Because all of defense counsel's errors have been rejected, there can be no cumulative effect.

**B.  ADDITIONAL ARGUMENTS BY PETITIONER NOT YET ADDRESSED**

### 1.  The Magistrate Judge's Recommendation, That the Court Find Mr. Lopez' Allegations Too "Conclusory" is Contrary to the Record

Here Petitioner asserts that he filed the affidavit of his wife, Aurora Lopez, who would have "personally refuted the allegations that Mr. Lopez was dealing drugs in the alleged locations."  However, under Strickland, even if counsel erred in denying Aurora Lopez the opportunity to testify, there were at least five witnesses who could, and did, refute such a claim in addition to tapes that incriminated Petitioner.  It is unlikely the testimony of one individual, especially the spouse, against such a manifest weight of the evidence, would foster a reasonable probability of a different outcome to warrant reversal.

### 2.  The Magistrate Judge Failed to Address Mr. Lopez' Claim that Jorge Farias Told the Police that the Person that Put the Drugs Into the Car Was a Man By the Name of "Luis Alvarez," Not "Joseph Lopez"

Applying the Strickland test, the testimony of one man concerning the confusion of a name does not create a reasonable probability of a different outcome, considering the substantial weight of evidence against him.

## C.  BOOKER ANALYSIS

### 1.  Lopez' Argument: A Sixth Amendment Claim Applying the Holdings of Apprendi, Blakely, and Booker

The thrust of Petitioner's argument is that he was denied due process of law and his Sixth Amendment rights to notice and a jury trial when the judge increased his statutory maximum sentence by facts not charged in the indictment, not submitted to a jury, and not proven by a reasonable doubt or admitted by Petitioner. The judge made upward adjustments to Petitioner's sentence, finding that Petitioner was involved in transactions totaling more than 150 kilograms of cocaine and also that Petitioner was an organizer and/or leader of the transactions.   As a result, the judge set Petitioner's base offense level at 38 and increased his offense level by four

15

levels based upon his findings that Petitioner was an organizer of the criminal activity which involved five or more participants.  Id.  Moreover, the Court found Petitioner directed all of the sales, facilitated all of the transactions regarding those sales, and/or directly participated in those sales.  Id.  The Court sentenced Petitioner to 360 months of imprisonment based upon the findings that Petitioner's offense level was 42 and his Criminal History Category was II.  Id.

Petitioner's argument is that this upward adjustment was unreasonable, violating both his due process rights and his Sixth Amendment rights to notice and a jury trial.  In support, he relies on the three main cases of Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 125 S. Ct. 738 (2005).

In Apprendi v. New Jersey, the Supreme Court "held that the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."

In Blakely v. Washington, the Supreme Court stated that Apprendi applies "anytime facts supporting a criminal defendant's sentence are neither admitted by the defendant in a plea colloquy nor found by a jury."  The Court added that 'the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.'" Id.

In United States v. Booker, the Court held that "Blakely and Apprendi applied to the United States Sentencing Guidelines ("USSG")." Id.  Also, Booker held  the USSG were no longer mandatory, but advisory, yet the judges must consult them in order to uphold a review by any appellate courts of a standard of "reasonableness."  Id.

16

Petitioner argues his sentence was adjusted unreasonably, beyond the statutory maximum, by facts not charged in his indictment, not submitted to a jury, not proven beyond a reasonable doubt or admitted by him, all of which violate the constitutional requirements of Apprendi.  Id. at 4.  Blakely defines "statutory" maximum in such a way that it creates doubt as to whether the judge made a sentence based solely upon the facts reflected in the jury verdict.  Lastly, Petitioner claims Booker applies because it makes Apprendi and Blakely, both of which dealt with state guidelines, apply to the USSG as well, which was the guideline system under which Petitioner was sentenced.  Therefore, Petitioner's argument is Apprendi and Blakely bar a judge, under the Booker decision, from adjusting a sentence in the fashion done in this case.

### 2.  Responses by the Government to the Apprendi/Blakely/Booker Challenge

#### a.  Retroactivity of Blakely and Booker to Apprendi

The government and the Magistrate Judge's Report and Recommendation argue  Blakely does not retroactively apply to Apprendi, which therefore bars Petitioner's claim since his case was decided in 2000, four years before Blakely. The Magistrate Judge notes that in Blakely, the Court did not state whether Blakely should be retroactively applied to Apprendi.  Id.  (Note that Apprendi, at least, does apply to Petitioner since his case was not "final" until after Apprendi was decided.)  Therefore, the Magistrate Judge argues, Blakely logic does not apply to Apprendi, and does not apply to Petitioner.

To clarify, the Magistrate Judge cites Schriro v. Summerlin, 542 U.S. 348 (2004) which was decided the same day as Blakely.  In Schriro, the Court held that  Ring v. Arizona, 536 U.S. 584 (2002) which, like Blakely, expanded its Apprendi decision, did not retroactively apply to death penalty cases that were already final on direct review.  Id.  In Ring, the Court held that "a

sentencing judge, sitting without a jury, [cannot] find an aggravating circumstance necessary for the imposition of the death penalty."  Id. at 609.

In Schriro, the Court held that new rule decisions apply only in limited circumstances to convictions that are already final, that is, to "substantive" or watershed rules, but not to a "procedural" rule.  The Court then held  Ring  announced a procedural rule, which meant that Ring did not retroactively apply to Schriro.  Id.  On that basis, the Magistrate Judge recommended  the Court find Blakely does not retroactively apply to Petitioner's case.

Petitioner presents three responses to the Magistrate's argument.

First, Petitioner states his case might not deal with retroactivity since his decision was not final by the time of Booker.  He states his case was not final on June 26, 2000 (the date Apprendi was decided), not final on June 24, 2004 (the date of Blakely), and not final on January 12, 2005 (the date of Booker).  Therefore, the Magistrate Judge's retroactivity analysis would be irrelevant, and all three decisions, Apprendi, Blakely, and Booker would directly apply to Petitioner.  However, the evidence demonstrates on March 17, 2003, Petitoner's writ of certiorari was denied and thus, his case on direct appeal ended.  Case No. 1-98CR356.  Therefore, Petitioner's case was final prior to the Blakely and Booker decisions.

Second, Petitioner argues that even if retroactivity is implicated, Petitioner's case may be retroactively applied pursuant to  Blakely and Schriro.  Since certiorari was denied on March 17, 2003, Apprendi does apply since it was decided in 2000, before Petitioner's case was made final by the denial of certiorari.  The question then, would be whether Blakely and Schriro may be applied to Petitioner's case since they were decided after certiorari was denied to Petitioner.

Petitioner cites Teague v. Lane, 489 U.S. 288 (1989), in which the Supreme Court held that "a new rule of law will not be applied to cases on collateral review where conviction was

18

final prior to the new rule's announcement."  However, this is true only when a *new* rule of law

is announced.  Id.  That is, retroactivity analysis is appropriate when a rule of law is not "new,"

but is rather "dictated" by Supreme Court precedent.  Id., citing Blakely, 2004 U.S. LEXIS at

**47-48 (Justice O'Connor, dissenting).

Petitioner argues neither Blakely nor Booker were new rules of law, but rather both were

"dictated" by Apprendi–which means that if this argument is true, the Court should retroactively

apply Petitioner's case to Blakely and Booker.  In Blakely, Justice Scalia, writing for the

majority, noted that: "Our precedents make clear...that the 'statutory maximum' for Apprendi

purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected

in the jury verdict or admitted by the defendant."  Id.

Likewise, in Booker, Petitioner contends Booker was dictated by Apprendi, since it held

that both Apprendi and Blakely applied to the USSG.  Id. at 2.  Writing for the majority, Justice

Stevens observed, "[m]ore important than the language used in our holding in *Apprendi* are the

principles we sought to vindicate. Those principles are unquestionably applicable to the

Guidelines. They are not the product of recent innovations in our jurisprudence, but rather have

their genesis in the ideals our constitutional tradition assimilated from the common law."

Booker, 125 S. Ct. at 753.  Even while dissenting in part, Justice Breyer noted that, "The Court's

substantive holding rests upon its decisions in Apprendi...and Blakely."  Id. at 802.

### b.  Review Precluded by Appeal

Respondent makes the argument that even if Petitioner is correct  that Blakely and

Booker do retroactively apply, Petitioner's argument is precluded by the fact that it was already

litigated by way of direct appeal to the Sixth Circuit, and was rejected.  Both respondent and the

Magistrate Judge suggest therefore, the only way a §2255 motion to relitigate an issue already

raised and rejected on appeal may be used is when there are "highly exceptional circumstances." DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996), quoting United States v. Brown, 62 F.3d 1418 (6th Cir. 1995).  Respondent asserts  there are no "highly exceptional circumstances" that would merit such a review on this particular motion.

Nonetheless, Petitioner argues that "[i]f an issue was previously raised on direct appeal, then an intervening change in law allows a defendant to relitigate that issue by filing a motion pursuant to §2255.  See Gilliam v. United States, 2000 U.S. App. LEXIS 8781 (6th Cir. 2000); Alexander v. United States, 1996 U.S. App. LEXIS 30282 (6th Cir. 1996); and Clark v. United States, 2000 U.S. App. LEXIS 3642 (6th Cir. 2000)(citing Davis v. United States, 417 U.S. 333, 342 (1974)).  Petitioner contends there is a viable argument that a change in law has occurred with the development of Apprendi, Blakely, and Booker in the application of the USSG to the Apprendi limitations on upward adjustments in sentencing.

### c.  Applicability of United States Sentencing Guidelines ("USSG")

Initially, the Magistrate Judge held in his Report and Recommendation that Blakely could be distinguished and did not apply to Petitioner's case because it only dealt with a state statutory scheme, not the USSG. However, the Magistrate Judge's Report and Recommendation has essentially been "updated" by the holding in Booker that the USSG do apply, and hence, Apprendi, Blakely and Booker may provide a basis for a resentencing hearing.

### d.  Even if a Mistake Were Made, It Was Still "Harmless Error"

The Magistrate's Report and Recommendation states that on Petitioner's direct appeal,

> the Sixth Circuit determined that although the district court's sentencing of Petitioner to 360 months exceeded the twenty-year maximum penalty under 21 U.S.C. § 841(b)(1)(cC) and thus violated Apprendi, the violation of Apprendi was harmless error.  The Court found that only harmless error resulted because the proper resentencing of Petitioner under Apprendi on both the conspiracy count and the distribution count for which he was

convicted, "both of which carry a statutory maximum of twenty years, [they] would run consecutively until reaching 360 months (240 months on the conspiracy count and 120 months on the distribution count), within the combined statutory maximum of forty years."

See Lopez, 309 F.3d at 970.

Again to overturn harmless error that was found on direct appeal by using a §2255 motion, again, Petitioner would need to show there were "exceptional circumstances" that would permit review of the judgment to see if it were indeed harmless error.  As noted, it is reasonable to say that an intervening change in the law would constitute a valid reason to relitigate an issue previously decided on appeal through a § 2255 motion.  Gilliam v. United States, 2000 U.S. App. LEXIS 8781 (6th Cir. 2000); Alexander v. United States, 1996 U.S. App. LEXIS 30282 (6th Cir. 1996); Clark v. United States, 2000 U.S. App. LEXIS 3642 (6th Cir. 2000)(citing Davis v. United States, 417 U.S. 333, 342 (1974)).

Nevertheless, the Court rejects Petitioner's arguments and finds a hearing for resentencing is not warranted.  First, the Sixth Circuit has expressly held Booker does not retroactively apply to cases on collateral review under §2255 for cases that became final prior to January 12, 2005, the date of the Booker opinion. Humphress v. United States, 398 F.3d 855, 860 (6th Cir. 2005).  As Petitioner's case became final on March 17, 2003, Booker is not applicable and is not retroactively applied.   The Court in Humphress expressly determined Booker was a new rule of criminal procedure, and was not dictated by Apprendi.  Therefore, Petitioner's arguments for retroactive application fail.

Second, Petitioner's Apprendi claims were considered by the appellate court on direct appeal and were rejected.  U.S. v. Lopez, 309 F.3d 966 (6th Cir. 2002).  "A 2255 Motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances,

21

such as an intervening change in the law." <u>Kirk v. United States of America,</u> No. 1:06CV 140,

2006 WL 1139920 (April 26, 2006 W.D. Mich) citing <u>DuPont v. United States,</u> 76 F.3d 108,

110-111 (6th Cir. 1996).  As <u>Apprendi</u> was the intervening law and was considered on direct

appeal, Petitioner may not relitigate the issue.

### IV. CONCLUSION

For the reasons stated above, the Court Adopts the Magistrate Judge' Report and

Recommendation and  rejects Petitioner's request for an evidentiary hearing and for a

resentencing hearing.

The Court finds that an appeal from this decision could not be taken in good faith.  28

U.S.C. §1915 (a)(3).  Further, Petitioner has not made a substantial showing of the denial of a

constitutional right; therefore, the Court declines to issue a certificate of appealability.  28 U.S.C.

§2253 (c)(2); Fed. R. App. P. 22(b).


IT IS SO ORDERED.


August 18, 2006                                 s/Christopher A. Boyko
**Date**                                        **CHRISTOPHER A. BOYKO**
                                                **United States District Judge**

22